UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SIMPLE HELIX, LLC,                    )
                                      )
            Plaintiff,                )
                                      )
    vs.                               )          Case No. 5:20-cv-00453-HNJ
                                      )
RELUS TECHNOLOGIES, LLC, and          )
WELLS FARGO BANK, N.A.,               )
                                      )
            Defendants.               )

## MEMORANDUM OPINON AND ORDER

On October 8, 2020, this court entered a memorandum opinion and order granting Defendant Relus Technologies, LLC's Motion to Dismiss and dismissing all claims against Relus Technologies, LLC ("Relus"). (Doc. 27).[1] On October 14, 2020, Simple Helix filed a Motion for Leave to File an Amended Complaint Under Federal Rule of Civil Procedure 15 to reassert account stated and breach-of-contract claims against Relus. (Doc. 28).

Like its original contractual claims, Simple Helix's new account stated and breach-of-contract claims arise from the allegedly fraudulent conduct of Steve Shickles, its former corporate officer, to procure from Relus a $501,207 wire transfer to Shickles's

---

[1] The court likewise granted Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss and dismissed all claims against Wells Fargo Bank, N.A. (Doc. 27).

1

personal bank account.  For the reasons discussed herein, the court concludes Simple Helix's proposed account stated and breach-of-contract claims suffer the same deficiencies that precluded these claims as originally pleaded.  In particular, agency and equitable principles foreclose Simple Helix from plausibly alleging that Relus breached a contractual duty to furnish Simple Helix the $501,207 sum.  The court therefore denies Simple Helix's Motion for Leave to File an Amended Complaint Under Federal Rule of Civil Procedure 15.

## I. BACKGROUND

### A.    This Court's October 8, 2020, Memorandum Opinion and Order

Simple Helix's original Complaint asserted claims against Relus for open account ("Count 1"), account stated ("Count 2"), money paid by mistake ("Count 3"), conversion ("Count 4"), money had and received ("Count 6"), and breach of contract ("Count 8").  (Doc. 1-1).  As referenced previously, Simple Helix's claims arose from Shickles's dealings with Relus, which culminated in Relus transferring $501,207 to Shickles's personal bank account.  The court recounts the relevant factual background of Simple Helix's claims as described in its October 8, 2020, memorandum opinion and order.

On or about May 26, 2017, Shickles initiated a $656,358 wire transfer from Simple Helix's FirstBank account to Relus's bank account.  (*Id.* ¶ 12).  The $656,358 transfer represented a $501,207 overpayment to Relus, as Simple Helix owed Relus only

2

$155,151 for materials, supplies, and services.  (*Id.* ¶ 39).  On May 31, 2017, Shickles emailed Relus employee Brian Eith from the fictitious email account "belinda.finley@simplehelix.com"[2] to request a refund of the $501,207 overpayment. (*Id.* ¶ 13, 14).  Impersonating Finley, Shickles wrote:

> Mr. Eith,
>
> Hello, Mr. Shickles asked me to email the wiring instructions for the refund on the wire from his FirstBank Account.
>
> Please wire the $501,207.00 to the following account:
>
> Routing: 062000080
> Acct: [XXX]
>
> Wells Fargo Bank
> 2754 Carl T Jones Dr Se
> Huntsville, AL 35802
>
> Once the wire has been sent, please send me confirmation so I can track it.
>
> Thanks,
> Belinda

(Doc. 16-1 at 2).[3]  The account number Shickles provided corresponded to his

---

[2] According to the original Complaint, Belinda Finley provided Simple Helix accounting services at the time of the overpayment; though, she was not a Simple Helix employee.  (Doc. 1-1 ¶ 13).  Finley neither created nor used the email address "belinda.finley@simplehelix.com."  (*Id.*)

[3] Relus appended to its Motion to Dismiss copies of Shickles's May 31, 2017, email and the ensuing reply chain.  Because Simple Helix's original Complaint referred to the emails comprising the May 31, 2017, email chain, and Simple Helix did not dispute the copies thereof Relus appended to its Motion, the court considered the contents of the email chain in assessing Relus's Motion to Dismiss.  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.

personal bank account at Wells Fargo.  (Doc. 1-1 ¶ 14).

Eith forwarded Shickles's email to Relus's Chief Operating Officer Scott Luce and confirmed the $501,207 overpayment as "correct."  (Doc. 16-1 at 2).  Eith further stated:  "The rest [$155,151] will cover the Ciena/Juniper order."  (*Id.*)   Thereafter, Luce replied to Shickles:

> Hi Belinda,
> Please confirm:
> Simple Helix wants the original wire from FirstBank ($656,358) that was sent to Relus partially refunded in the amount of ($501,207) sent to [a] Wells Fargo account.

(*Id.* at 1).

---

2005)); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (a court may consider documents filed in conjunction with a motion to dismiss without converting the motion to a summary judgment motion if those documents are central to the complaint and not in dispute).  Neither Relus nor Simple Helix appended a copy of the email chain to their filings vis-à-vis the instant Motion.  However, pursuant to the afore-cited authority, the court may nevertheless consider the email chain in assessing Simple Helix's Motion, as Simple Helix's proposed Amended Complaint references the emails comprising the email chain, and neither party disputes authenticity of the copies thereof.  *See Spencer v. Nat'l City Mortg.*, No. 1:10-cv-3532-TCB, 2012 U.S. Dist. LEXIS 202881, at *18 n.8 (N.D. Ga. Feb. 27, 2012) (the court considered security deeds the defendant appended to its objections to a report and recommendation, even though the plaintiff did not append the deeds to her motion to amend her complaint, and the defendant did not append the deeds to its opposition to the plaintiff's motion) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") (alteration in original)); *Hamilton v. Blum*, No. 08-61336-CIV-ZLOCH/ROSENBAUM, 2009 U.S. Dist. LEXIS 138112, at *15 (S.D. Fla. Dec. 4, 2009) ("[A]lthough the Shareholders' Agreement and Amended Shareholders' Agreement were not attached to the Amended Complaint, the Court may consider both documents because Plaintiff incorporated them by reference into the Amended Complaint, they appear to be central to the claims, and Defendants have not disputed their authenticity.").

Shickles either instructed his administrative assistant Victoria Schulze to use her email account, "victoria.schulze@simplehelix.com", or himself used Schulze's email account, to reply to Luce: "That is confirmed." (*Id.*) The confirmation email sent from Schulze's account copied Shickles via his Simple Helix email account, "steve@simplehelix.com." (*Id.*) Thereafter, Relus refunded the $501,207 overpayment to Shickles's personal Wells Fargo bank account via a wire transfer. (Doc. 1-1 ¶ 17).

In its October 8, 2020, memorandum opinion and order, this court held Simple Helix did not state plausible account stated or breach-of-contract claims against Relus. The court assessed the account stated and breach-of-contract claims concurrently pursuant to the account stated paradigm, as both claims concerned an agreement or promise by Relus to refund the $501,207 sum Simple Helix overpaid for materials, supplies, and services. The court concluded Relus discharged any contractual duty to refund Simple Helix the $501,207 overpayment. Specifically, Simple Helix's allegations established that Shickles, acting as Simple Helix's agent, bound Simple Helix to his refund instructions, and, therewith, bound Simple Helix to the $501,207 wire transfer he procured from Relus.

Critically, Simple Helix irrefutably established that Shickles possessed either the implied or apparent authority to request Relus refund the $501,207 overpayment pursuant to his instructions, and, therewith, bind Simple Helix to Relus's wire transfer. Simple Helix alleged "*it* overpaid Relus by $501,207.00", (doc. 1-1 ¶ 63) (emphasis

added), and *it* "rendered the statement of the account to Relus in the form of an email request for a refund of the overpaid amount." (Doc. 1-1 ¶ 36). Simple Helix thus imputed Shickles's overpayment and refund request to itself, and, by extension, tacitly averred that Shickles retained sufficient agency authority to contract and bind Simple Helix to these acts. Therefore, pursuant to its own allegations, Shickles's acts and representations were attributable to Simple Helix. Concomitantly, Relus transferred the $501,207 to Shickles's personal bank account pursuant to the email request from Simple Helix (via Shickles's agency authority), and, therewith, discharged its duty to refund Simple Helix the $501,207 overpayment.

Further, the equitable estoppel doctrine foreclosed Simple Helix's contention it formed a binding contract with Relus via Shickles's refund request and wiring instructions, yet was not bound by the $501,207 wire transfer Relus furnished pursuant to such instructions. To wit, because Relus detrimentally relied upon Shickles's misrepresentations, and Simple Helix enabled Shickles's misconduct by appointing him CEO and failing to "discover[] [his] scheme", (doc. 1-1 ¶ 26), Simple Helix – rather than Relus – should, in equity, bear the loss of Shickles's deceit. (Doc. 27 at 53–59).

Finally, the court rejected Simple Helix's passing request in its response brief to amend its Complaint to replead its contractual claims. However, the court nonetheless suggested Simple Helix could seek leave to amend its Complaint pursuant to Federal Rule of Civil Procedure 15, for the purpose of "presenting well-pleaded averments

6

portraying Relus's nonperformance of a contractual duty."[4]  (*Id.* at 59).

## B.   **Simple Helix's Proposed Amendments**

Simple Helix proposes to file an Amended Complaint that would aver new account stated and breach-of-contract claims against Relus based upon the afore-described $501,207 wire transfer.  The account stated claim ("Count I") asserts that Simple Helix "paid Relus $501,207.00 more than was due on its account."  (Doc. 28-1 ¶ 23).  Simple Helix alleges that "[u]pon being alerted of the overpayment, Relus acknowledged the overpayment and the amount of $501,207.00 to be refunded to Simple Helix."  (*Id.* ¶ 24).  Simple Helix avers that "[w]hile Relus attempted to resolve the stated account, it failed to act in a reasonable manner, and, instead of resolving the account by sending to Simple Helix the $501,2017.00 it was owed, Relus wired the money to an account at a bank [Wells Fargo] that it knew, or had reason to know did not belong to Simple Helix."  (*Id.* ¶ 26).

Likewise, Simple Helix's proposed breach-of-contract claim ("Count II") alleges the "[p]arties' conduct, actions, and course of dealing" engendered a contract whereby "Relus [would] provide materials, supplies, and services to [Simple Helix], and [Simple Helix] would timely pay Relus the purchase price."  (*Id.* ¶ 29).  Simple Helix avers "it

---

[4] The court dismissed Simple Helix's open account, money paid by mistake, conversion, and money had and received claims against Relus, (doc. 27 at 36–41, 45–48), and Simple Helix does not reassert these claims in its proposed Amended Complaint.  (Doc. 28-1).

overpaid Relus by $501,207.00", (*id.* ¶ 30), and maintains that because "Relus never provided any additional materials, supplies, or services that would entitle Relus to retain any portion of the $501,207.00 overpayment", Relus incurred an obligation to refund Simple Helix the $501,207 overpayment.  (*Id.* ¶¶ 31–32).  Simple Helix alleges "Relus breached its contractual obligation to refund the money to Simple Helix by ignoring the apparent signs of fraud by Shickles and sending the money belonging to Simple Helix to an account at a bank [Wells Fargo] that it knew, or had reason to know, did not belong to Simple Helix."  (*Id.* ¶ 33).

Simple Helix requests "compensatory damages, interest, attorneys' fees, costs, and all other just and proper relief" for its account stated and breach-of-contract claims. (*Id.* ¶¶ 27, 34).

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 15(a), a court should "freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

> "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should as the rules require be 'freely given.'" *Loggerhead Turtle v. County Council of Volusia County, Florida*, 148 F.3d 1231, 1255 (11th Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

*Brown v. Williamson*, 134 F. Supp. 2d 1286, 1288 (M.D. Ala. 2001).

8

However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (citing *Foman*, 371 U.S. at 182). Futility ensues "when the complaint as amended is still subject to dismissal." *Id.* at 1263 (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted)). Here, therefore, the court must determine whether Simple Helix's proposed account stated and breach-of-contract claims would survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Hoke v. Lyle*, 716 F. App'x 930, 931 (11th Cir. 2018) ("A proposed amendment is futile when the complaint as amended would not survive a Rule 12(b)(6) motion to dismiss.") (citing *Burger King Corp.*, 169 F.3d at 1320).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss. First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue. *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted).

In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* at 678, 679 (citations omitted).

To recount, Simple Helix's proposed Amended Complaint asserts claims against Relus for an account stated and breach of contract. As elaborated in the following discussion, Simple Helix's new account stated and breach-of-contract claims establish Shickles's authority to bind Simple Helix to Relus's executed, $501,207 wire transfer. Shickles and Simple Helix's agency relationship, in turn, establishes that Relus discharged its contractual duty to refund Simple Helix the $501,207 overpayment via its wire transfer to Shickles' Wells Fargo account. Accordingly, Simple Helix's proposed Amended Complaint warrants dismissal due to its futility.

10

An account stated constitutes "an agreement between parties who have had previous monetary transactions." *Karrh v. Crawford-Sturgeon Ins., Inc.*, 468 So. 2d 175, 176 (Ala. Civ. App. 1985) (citation omitted).  Thus,

> An account stated is a post-transaction agreement. It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount. It is as if a promissory note had been given for the balance due.
>
> A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. The debtor's admission to the correctness of the statement and to his liability thereon can be express or implied. An account rendered, and not objected to within a reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account.

*Stacey v. Peed*, 142 So. 3d 529, 532 (Ala. 2013) (citations omitted).

An account stated thus properly constitutes "a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount." *Univ. of S. Ala. v. Bracy*, 466 So. 2d 148, 150 (Ala. Civ. App. 1985) (citation omitted).  Once a plaintiff proves a prima facie case of an account stated, the burden shifts to a defendant to assert any available legal defense.  *Karrh*, 468 So. 2d at 176 (citation omitted).  Importantly, an "account is a

general term which covers an item of indebtedness, *by contract, express or implied*." *Stacey*, 142 So. 3d at 532 (citations omitted) (emphasis in original).

Relatedly, to state a viable breach-of-contract claim, Simple Helix must allege: "(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1267 (Ala. 2011) (citation omitted).

Like its original contractual claims, Simple Helix's proposed account stated and breach-of-contract claims both concern the same contract properly arising under the account stated framework:  an agreement or promise by Relus to refund the $501,207 sum Simple Helix overpaid for materials, supplies, and services.   Simple Helix's allegations vis-à-vis the "[p]arties' conduct, actions, and course of dealing" reference a prior monetary transaction between Simple Helix and Relus, whereas the agreement regarding the refund constitutes a post-transaction contract, that is, an account stated. Therefore, the court will assess Simple Helix's proposed account stated and breach-of-contract claims concurrently pursuant to the foregoing standards.[5]

---

[5] The allowance to file an amended complaint flowed from specific allegations in Simple Helix's Complaint, now repeated in the Amended Complaint, suggesting a binding practice from the parties' "conduct, actions, and course of dealing." (Doc. 1-1 at 16, ¶ 62; Doc. 28-1 at ¶ 29). Given the circumstances of the case, the language implicitly suggests that the handling of past overpayments engendered a contractual obligation whereby Relus would return any overpayment to Simple Helix by refunding the account from which Simple Helix initiated a payment. Such an established "course of dealing" would create contractual rights:

In other contexts, "course of dealing" is defined as "a sequence of previous conduct

12

Simple Helix's proposed Amended Complaint fails to plausibly allege account stated and breach-of-contract claims for effectively the same reasons discussed in the court's October 8, 2020, memorandum opinion and order.  As portrayed in its original Complaint, the allegations in Simple Helix's proposed Amended Complaint concretely establish that Shickles possessed either the implied or apparent authority to demand Relus refund the $501,207 overpayment pursuant to his confirmation of the wiring instructions, and, therewith, bind Simple Helix to Relus's conforming wire transfer.

---

between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Ala. Code 1975, § 7–1–205(1). A course of dealing is "relevant not only to the interpretation of express contract terms, but may [itself] constitute contract terms." James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 3–3, at 98 (2d ed.1980). Indeed, it "may not only supplement or qualify express terms, but in appropriate circumstances, may even *override* express terms." *Id.* (emphasis added).

*Marshall Durbin Farms, Inc. v. Fuller*, 794 So. 2d 320, 325 (Ala. 2000); *see also Ex parte Coussement*, 412 So. 2d 783, 786 (Ala. 1982) ("A course of dealing is shown through prior transactions of the parties. . . . A course of dealing is a course of 'previous conduct between the parties . . . .'") (citations omitted).

However, Simple Helix did not aver any facts evincing a contract emanating from a course of dealing; rather, as portrayed the breach of contract allegations essentially state an account stated claim. Indeed, Simple Helix represents that the parties never encountered an overpayment until the transaction underlying its pleadings:

> Relus and Simple Helix had a history of business transactions wherein Simple Helix would purchase materials from Relus and then accurately pay Relus for those materials; no more, no less. In all those years of numerous transactions, Simple Helix had never once made a colossal overpayment of more than half-a-million dollars. However, when such a sizeable overpayment actually happened for the first time ever between Simple Helix and Relus . . . .

(Doc. 28 at 5). The foregoing contention forecloses the existence of a course-of-dealing contract separate from the account stated claim.

13

As elaborated in the court's October 8, 2020, memorandum opinion and order, "[a]n agent's authority to contract on behalf of his principal must be either expressed, implied, or apparent." *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1203 (N.D. Ala. 2009) (quoting *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 304 (Ala. 1986)).  Alabama law further provides:

> [i]mplied authority may be viewed as actual authority given implicitly by the principal to the agent; and, as otherwise stated, it is actual authority circumstantially proved, or evidenced by conduct or inferred from course of dealing between the alleged principal and agent. It differs from apparent authority in that it is authority which the principal intended that the agent should have.

*Patterson v. Page Aircraft Maint., Inc.*, 283 So. 2d 433, 125–26 (Ala. Civ. App. 1973) (quoting 2A C.J.S. *Agency* § 153).  Further, an agent retains the authority to "[d]o everything necessary or proper and usual in the ordinary course of business for effecting the purpose of his agency." Ala. Code § 8-2-4.

As for apparent authority, a "principal is bound by acts of his agent under a merely ostensible authority to those persons only who have in good faith and without want of ordinary care incurred a liability or parted with value upon the faith thereof." *Id.* § 8-2-6.  In addition, a principle clothes an agent with apparent authority by "holding the potential agent out to third parties as having the authority to act." *Malmberg v. Am. Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994).  Similarly, an agent's apparent authority is "implied where the principal passively permits the agent to appear to a third

14

person to have the authority to act on [the principal's] behalf." *Kindred Nursing Ctrs. E., LLC v. Jones*, 201 So. 3d 1146, 1154–55 (Ala. 2016) (quoting *Carraway v. Beverly Enters. Ala., Inc.*, 978 So. 2d 27, 30 (Ala. 2007)).

Therefore, the "doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the *principal's* holding the agent out to a third person as having the authority under which he acts." *Fletcher v. Lupo*, No. 2:08-CV-01844-JEO, 2011 WL 13233198, at *7 (N.D. Ala. July 5, 2011), *rept. & recommend. adopted sub nom. Major Gen. Paul Fletcher v. Lupo*, No. 2:08-CV-01844-JEO, 2011 WL 13233423 (N.D. Ala. Sept. 8, 2011) (quoting *Johnson v. Shenandoah Life Ins. Co.*, 281 So. 2d 636, 640 (Ala. 1973) (emphasis in original)). "Apparent authority rests upon what the principal, not the alleged agent, conveys to a third party." *Id.*

Consistent with these principles, therefore, "[a]n agent acts with apparent authority only when a third party's belief that the agent acts with authority is reasonable and is traceable to a manifestation made by the principal." RESTATEMENT (THIRD) OF AGENCY § 6.11. As the Restatement (Third) of Agency elaborates, an agent's apparent authority to act arises as "to a third person by . . . conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Id.* § 27.

The allegations in Simple Helix's proposed Amended Complaint effectively mirror those in its original Complaint, save two substantive differences. First, whereas Simple Helix originally alleged "*it* overpaid Relus by $501,207.00", (doc. 1-1 ¶ 63) (emphasis added), and *it* "rendered the statement of the account to Relus in the form of an email request for a refund of the overpaid amount", (*id.* ¶ 36), Simple Helix newly alleges "*it* overpaid Relus by $501,207.00", but omits specific reference to furnishing Relus the emailed refund request. (Doc. 28-1 ¶ 30) (emphasis added). Rather, Simple Helix merely alleges Relus was "alerted [to] the overpayment." (*Id.* ¶ 24).

Relatedly, whereas Simple Helix originally alleged Relus failed to "act[] appropriately" in refunding the $501,207 overpayment, (doc. 1-1 ¶ 26), Simple Helix newly alleges "Relus breached its contractual obligation to refund the money to Simple Helix by ignoring the apparent signs of fraud by Shickles and sending the money belonging to Simple Helix to an account at a bank that it knew, or had reason to know, did not belong to Simple Helix." (Doc. 28-1 ¶ 33).

Despite Simple Helix's new allegations, the proposed Amended Complaint nevertheless fails to state plausible account stated and breach-of-contract claims. First, and significantly, by re-alleging that "*it* overpaid Relus by $501,207.00", (*id.* ¶ 30) (emphasis added), Simple Helix again attributes Shickles's conduct as its own, because it was Shickles who overpaid Relus. By extension, Simple Helix "tacitly avers that Shickles retained sufficient agency authority to . . . bind Simple Helix to" the acts

16

incident to the overpayment, i.e., effecting the refund of the sum.  (Doc. 27 at 53).

Thus, like its original allegations, Simple Helix's new allegations establish that Shickles's

actions remain ascribed to Simple Helix.  *See* RESTATEMENT (THIRD) OF AGENCY §

6.11(2) ("A representation by an agent made incident to a contract or conveyance is

attributed to a disclosed or unidentified principal as if the principal made the

representation directly when the agent had actual or apparent authority to make the

contract or conveyance unless the third party knew or had reason to know that the

representation was untrue or that the agent acted without actual authority in making

it.").

Consequently, by embracing Shickles's transaction encompassing the $501,207

overpayment as its own, Simple Helix forecloses the plausibility of any allegation that

Shickles lacked agency authority to bind Simple Helix to the ensuing contractual

agreement with Relus.  To recount, the alleged contractual agreement emerged when

Relus acknowledged Shickles's instruction to refund the $501,207 overpayment to the

designated Wells Fargo account.  *See* docs. 16-1 & 28-1.  Crucially, because this

agreement concerned Relus refunding the overpayment, and Shickles tendered the

overpayment pursuant to the agency authority Simple Helix implicitly acknowledges,

Shickles retained authority to furnish the concomitant refund instructions as an incident

to the overpayment and his underlying agency authority.  *See Coston-Riles Lumber Co. v.

Ala. Mach. & Supply Co.*, 95 So. 577, 578 (Ala. 1923) ("As a general rule of law every

17

grant of power implies and carries with it, as an incident, authority to do whatever acts, or use whatever means are reasonably necessary and proper to the accomplishment of the purpose for which the agency was created. Such incidental authority includes all acts and things which are connected with and essential to the business in hand; it is measured by the nature and necessities of the purpose to be accomplished, and is prima facie coextensive with the business intrusted to the agent's care.") (quoting 2 CORP. JUR. 578 § 220); Ala. Code § 8-2-4; RESTATEMENT (THIRD) OF AGENCY § 3.03 ("A principal may also make a manifestation by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation. Third parties who interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so."); RESTATEMENT (SECOND) OF AGENCY § 35 ("Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it."); ALA. CORP. L § 5:38 ("A corporate officer may . . . be considered to have what is termed 'inherent authority' arising from the responsibility with which the officer is invested. Inherent authority, though bearing a resemblance to apparent authority because of its emphasis on the responsibilities of a position, does not require a holding out by the principal. It is based more on the unfairness of

18

disallowing an obligation on the principal's part rather than on strict principles of agency.").

Thus, just as Shickles possessed authority to furnish the overpayment and bind Simple Helix thereto, Shickles possessed authority to instruct Relus as to the refund and bind Simple Helix to his instructions.   Accordingly, Shickles's refund instructions remain attributable to Simple Helix.   *See Republic Iron & Steel Co. v. Self*, 68 So. 328, 329 (Ala. 1915) (If an agent's wrongful conduct constituted "an incident to carrying on the master's business, the master may be held liable, though he did not authorize the agent to resort to such means in rendering the service for which he was employed."), *overruled on other grounds by Cooper v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 385 So. 2d 630 (Ala. 1980); *c.f. A. P. Carrico & Son v. J. E. Duval Printing Co.*, 121 So. 59, 62 (Ala. 1929) ("A superintendent authorized to negotiate and sign a contract has implied authority to modify such contract.").[6]

---

[6] Furthermore, as discussed in the court's October 8, 2020, memorandum opinion and order,

> Simple Helix deemed Shickles a "manager" and an officer in verified complaints and affidavits in its state court case against Shickles.   Pursuant to a line of longstanding Alabama law, "[u]nless the authority of a general manager is restricted, his authority and powers are coextensive with the powers of the corporation itself, and he has the authority to do any act on its own behalf . . . in the ordinary course of the company's business." *In re Int'l Resorts, Inc.*, 46 B.R. 405, 415–16 (N.D. Ala. 1984) (quoting *Belcher*, 348 F. Supp. at 122) (second alteration in original); *see also Anderson v. McAllister Towing & Transp. Co.*, 17 F. Supp. 2d 1280, 1289 (S.D. Ala. 1998), *aff'd sub nom. Anderson v. McAllister Towing*, 202 F.3d 287 (11th Cir. 1999) (same) (citing *Belcher, supra*; *W.T. Rawleigh Co. v. Phillips*, 167 So. 271, 272 (Ala. 1936) ("A general manager has broad powers and implied authority to control the affairs of the company.")).

Indeed, although Simple Helix does not, as in its original Complaint, newly allege that *it* emailed Relus the refund instructions, it nevertheless again implicitly adopts Shickles and Relus's refund agreement as its own, for Simple Helix could not press any contractual rights via the instant account stated and breach-of-contract claims if Shickles did not bind Simple Helix to the refund promise. That is, if Shickles acted without agency authority in securing Relus's promise to refund the overpayment, then Simple Helix enjoys no rights vis-à-vis the ensuing agreement. However, by claiming an entitlement to relief via an account stated and breach of contract, Simple Helix necessarily repudiates the possibility "Shickles was acting outside the scope of his

---

(Doc. 28 at 54 n.31). These agency principles buttress the conclusion that when Shickles instructed Relus as to the refund, he acted not only within the scope of the authority Simple Helix impliedly embraces vis-à-vis his tender of the overpayment, but also within his inherent managerial powers. *See Simpson & Harper v. Harris & Scrandrett*, 56 So. 968, 969 (Ala. 1911) ("If [the agent] was the general manager of plaintiffs' business, and this contract was within the line of such business, and within the sphere of his powers as such manager, then he had the right to bind plaintiffs as to and by this contract."); *Pickens Co. v. Thomas*, 111 S.E. 27, 28 (Ga. 1922) ("If a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business; and this rule applies peculiarly to corporations which act only through their officers and agents."); *Martin v. McLain*, 180 S.E. 510, 511 (Ga. Ct. App. 1935) ("While an authorization to a person to manage a business, such as a farm, would not generally include authority to make unusual or extraordinary contracts with reference thereto, . . . it would empower such person to make such contracts as are incidental to such operation, which are usually made in it, or are reasonably necessary in conducting it . . . ."); *c.f. Hargrove v. Armour Fertilizer Works*, 120 S.E. 800, 802 (Ga. Ct. App. 1923) ("The purchase of fertilizers on account, to be used in the business of farming, may be said as a matter of law to be a transaction within the scope of the business."); *see also* RESTATEMENT (SECOND) OF AGENCY § 73(a) ("Unless otherwise agreed, authority to manage a business includes authority . . . to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it."); ALA. CORP. L § 5:43 ("[W]here a general manager is held out by the corporation as having authority beyond that actually conferred or implied, the corporation will be bound by the manager's actions despite those limitations.").

authority in requesting $501,207.00 be sent to [the Wells Fargo] bank account." (Doc. 31 at 5). Therefore, Simple Helix effectively concedes Shickles possessed authority to issue the refund instructions and bind Simple Helix to the same.

Simple Helix finds no refuge in its allegations that Relus "knew, or had reason to know, that Shickles was acting without actual authority in requesting that funds be diverted to his personal bank account", (doc. 28 at 3), and that Relus "ignor[ed] the apparent signs of fraud by Shickles." (Doc. 28-1 ¶ 33). Simple Helix insists "Relus did not exercise reasonable diligence or prudence in ascertaining whether Shickles had the authority to redirect money into an unfamiliar bank account, despite the various red-flag signals obligating Relus to do so." (*Id.* at 6). It maintains the "novel, red-flag circumstances [of the refund request] created a burden for Relus to act prudently in determining if such a unique request (of refunding money to an account from which it did not originate) was within the agent's actual authority." (*Id.* at 5). However, when viewed from Relus's third-party perspective, these "red-flag" circumstances do not plausibly belie Shickles's agency authority. *See Fletcher*, 2011 WL 13233198, at *7; RESTATEMENT (THIRD) OF AGENCY § 6.11 (an agent's apparent authority to act arises from the principal's manifestations to a third party).

Importantly, the refund instructions flashed ominously not simply based upon the directive to refund the $501,207 overpayment to a discrepant bank account; it raised "red flags" because the directive apparently issued from Finley – who, from Relus's

standpoint, neither served as Simple Helix's employee nor agent. So the pleading does not plausibly portray that Relus's suspicion as to the refund instructions landed upon the person who exercised authority: Shickles. Rather, the suspicion docked upon the identity Shickles used to perpetrate the fraud: Finley. As Simple Helix highlights, "Relus recognized that such a request could be part of a fraudulent scheme and questioned the request" via Luce's confirmation email. (Doc. 31 at 5). And, significantly, the subsequent email confirming the refund instructions originated from Schulze's account – who, according to the original Complaint, "was Shickles'[s] administrative assistant at the time", (doc. 1-1 ¶ 16) – and *copied Shickles* via his Simple Helix email account, "steve@simplehelix.com."[7]  (Doc. 16-1 at 1).

Crucially, therefore, as to Relus, the once-suspect demand conveyed by a person apparently lacking authority to request the $501,207 refund – Finley – was sanctioned

---

[7] Relus thus erroneously states "an email was sent from the [Finley email account] confirming the wiring instructions", (doc. 28-1 ¶ 16):

> Indeed, when the exhibits [to a pleading] contradict the general and conclusory allegations of the pleading, the exhibits govern. *See Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir.1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons* [*v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)] ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

by a corporate officer apparently or impliedly possessing such authority – Shickles. Based upon these circumstances, and absent any allegations Relus knew Shickles assumed the identity of Finley or Schulze, Simple Helix does not plausibly allege Relus "ignor[ed] the apparent signs of fraud by Shickles."[8] (Doc. 28-1 ¶ 33). To the contrary, by virtue of the Schulze confirmation email copying Shickles, Relus reasonably discerned that Shickles, based upon his authority, confirmed the request to refund the

---

[8] Importantly, in opposing Relus's April 23, 2020, Motion to Dismiss, Simple Helix implicitly renounced any allegations Relus knew of Shickles's fraud:

> Relus'[s] participation [in] or knowledge of [Shickles's] fraud is not an element of [Simple Helix's] claims . . . against Relus. . . . The level to which Relus knew of or participated in Shickles'[s] wrongdoing, which will not be known until after discovery, is immaterial to the elements of Simple Helix's claim for account stated. . . . [N]one of the elements of a claim for breach of contract require that Simple Helix allege knowledge of or participation in any wrongdoing by Shickles.

(Doc. 25 at 1, 6, 9). Thus, neither Simple Helix's original Complaint nor its proposed Amended Complaint alleges Relus knew Shickles fraudulently assumed Finley's identity in rendering the refund instructions. The lack of any such allegations renders inoperative Simple Helix's allusion to the possibility that discovery may uncover Relus's knowledge of Shickles's fraud. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–89 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017) ("Under *Twombly* and *Iqbal*, . . . only plausible-and not merely possible-claims survive a Rule 12(b)(6) motion to dismiss."); *In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895-WSD, 2009 U.S. Dist. LEXIS 14276, at *55–56 (N.D. Ga. Jan. 28, 2009) (The plaintiffs' amended complaint warranted dismissal in part because "[e]mbedded in [its] allegations is the prospect, unsupported by factual allegations, that discovery might support that an antitrust conspiracy did in fact result from the confluence of the events alleged", and such a prospect remained insufficient to state a plausible claim for relief.); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 278 (D.N.J. 2007) ("[N]o 'reassurances of the plaintiff's counsel' that discovery would soon flesh out a plaintiff's claim, which is pled so that it is 'just shy of a plausible entitlement,' can prevent Fed. R. Civ. P. 12(b)(6) dismissal.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 n.6 (2007)).

$501,207 to the designated Wells Fargo account.[9]  *See* RESTATEMENT (THIRD) OF AGENCY § 6.11. That is, a company official with authority validated Relus's confirmation efforts – Shickles -- not the purported person who engendered the suspicion -- Finley. In short, Shickles's deception cast fleeting aspersions only upon the validity of Finley's authority, not upon his own.

Accordingly, because the pleadings portray that Shickles possessed authority to effect Relus's refund of the $501,207 overpayment, Simple Helix remains bound by Shickles's confirmation of the refund instructions. *See Overton v. Harrison*, 93 So. 564, 565 (Ala. 1922) ("As a general rule, the principal . . . is invested by the authorized act of the agent, for the benefit and advantage of the principal, with every right and burdened with every liability arising out of or pertaining to the contract as perfectly as if the principal had, in his own name and person, made the contract."); 3 AM. JUR. 2D *Agency*

---

[9] Simple Helix urges "it is usually a question for the trier of fact whether a reasonable person in the position of a third party would believe than an agent had the authority or the right to a particular act." (Doc. 28 at 4) (quoting RESTATEMENT (THIRD) OF AGENCY 2.03 cmt. d. (2006)). Similarly, Simple Helix emphasizes its allegations "are sufficient to show that Relus knew or had reason to know Shickles was acting outside the scope of his apparent authority, which must be taken as true and read in the light most favorable to Simple Helix." (Doc. 31 at 8). However, the court does not resolve any **valid** factual disputes in assessing the sufficiency of Simple Helix's new allegations. Rather, the court merely ascertains whether the new allegations state *plausible* claims for relief. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. As discussed above, Simple Helix's allegations foreclose any plausible claims that Relus breached a contractual duty, and the applicable legal standards do not alter this conclusion. To reinforce, because Simple Helix implicitly acknowledges via its asserted contract rights that Shickles acted within the scope of his agency powers in confirming the refund instructions, Simple Helix does not plausibly contend "Relus did not exercise reasonable diligence or prudence in ascertaining whether Shickles had the authority to redirect money into an unfamiliar bank account." (Doc. 28 at 6).

§ 157 ("If an agent who acts with actual or apparent authority enters into a contract on behalf of a disclosed principal, that principal and the third party are parties to the contract.").  Because Relus refunded the $501,207 overpayment as directed by Shickles pursuant to his authority, Relus discharged its duty to Simple Helix to refund the overpayment.  Concomitantly, Simple Helix fails to plausibly allege Relus breached a contractual duty to furnish the $501,207 refund.

Furthermore, despite Simple Helix's protestations, the equitable estoppel doctrine properly precludes the claims at bar:[10]

> The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience.

> In order for the doctrine of equitable estoppel to apply, a party must demonstrate:

> (1) That the person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;

---

[10] Although equitable estoppel constitutes an affirmative defense, a "complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint."  *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citation omitted); *see also Culver v. Lang*, 935 So. 2d 475, 478 (Ala. Civ. App. 2006) ("A party can obtain a dismissal [of a compliant] on the basis of an affirmative defense only when "the affirmative defense appears clearly on the face of the pleading.") (quoting *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1193 (Ala. 2003)).

(2) That the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon the communication; and

(3) That the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*Wehle v. Bradley*, 195 So. 3d 928, 939 (Ala. 2015) (internal citations, alterations, and quotation marks omitted).

As in its original Complaint, "[t]he equitable estoppel defense manifests plainly on the face of Simple Helix's [proposed Amended] Complaint." (Doc. 27 at 56). Simple Helix thus remains equitably estopped from asserting the instant account stated and breach-of-contract claims for precisely the reasons discussed in the court's October 8, 2020, memorandum opinion and order:

> Simple Helix['s] [new allegations establish that] Shickles bound it to the agreement with Relus to refund the overpayment and, therefore it yields to Shickles's May 31, 2017, refund instructions. Further, the May 31, 2017, refund request itself portrays Shickles's – and, by ascription, Simple Helix's – 'intention that the [refund request] [would] be acted on.' *Wehle*, 195 So. 3d at 939. Next, the [proposed Amended] Complaint depicts that by wiring the $501,207 refund to Shickles's Wells Fargo account, Relus 'relie[d] upon the [refund request]' without knowledge of the misrepresentations therein. *Id.* Finally, because Relus relinquished the $501,207 overpayment pursuant to Simple Helix's instructions, Relus 'would be harmed materially' were Simple Helix 'permitted to assert' any additional right to a $501,207 payment. *Id.*

(Doc. 27 at 56–57).

Simple Helix contends that because "Relus knew or should have known that Shickles was acting outside his scope of apparent authority, Relus cannot escape liability

26

on the basis of equitable estoppel because, in such a circumstance as demonstrated by Simple Helix's allegations, Relus was required to ascertain whether Shickles was within his powers." (Doc. 31 at 8). However, as elaborated in the foregoing discussion, Relus sustained no reason to know or discern that Shickles acted outside of his authority. Again, the pleading portrays that Shickles's deception sullied Finley, not himself.

Moreover, and again, "Simple Helix cannot at once acknowledge [via its asserted contract rights] that Shickles retained the authority to demand the refund and maintain that Relus should have done more to ascertain Shickles's authority." (Doc. 27 at 56 n.33) (citing *Malmberg v. Am. Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994) ("When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency.") (quoting *Pearson v. Agric. Ins. Co.*, 25 So. 2d 164, 167 (Ala. 1946)); *Van Derveer v. Strickland Bros. Mach. Co.*, 81 So. 197, 197 (Ala. Civ. App. 1919) ("When a third party, in dealing with an agent, has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority, and in such case a party dealing with the agent in good faith, relying upon the apparent authority with which the principal has clothed the agent, in the exercise of reasonable prudence is protected by the law as to all contracts made by him with such agent within the scope of the apparent authority of such agent.")).

27

Likewise, Simple Helix cannot again base its alleged contract rights upon Shickles's refund facilitation, "yet disavow it is bound by the $501,207 wire transfer Relus furnished" pursuant to such facilitation. (*Id.* at 54). Like the original Complaint, the proposed Amended Complaint depicts that Simple Helix enabled Shickles's misconduct by appointing him CEO and failing to "discover[] [his] scheme." (Docs. 1-1 ¶ 26 & 28-1 ¶ 20). Nevertheless, as Relus emphasizes, Simple Helix "still [unjustly] seeks to have Relus pay twice to compensate [Simple Helix] for its CEO's fraud." (Doc. 30 at 9). As referenced previously, however, Relus reasonably and detrimentally relied upon the authority Simple Helix empowered Shickles to exercise (Shickles's abuse of such power notwithstanding).

The court therefore reiterates that "seeing somebody must be a loser by this deceit, it is more reason that he that employs and puts trust and confidence in the deceiver should be a loser than a stranger." (Doc. 27 at 58) (quoting *Merchants' Bank v. State Bank*, 77 U.S. 604, 646 (1870)). Based upon the allegations and **valid** factual circumstances depicted in the proposed Amended Complaint, Simple Helix's "own conduct renders the assertion of [its account stated and breach-of-contract claims] contrary to equity and good conscience." *Wehle*, 195 So. 3d at 939. Thus, in equity, the court must again foreclose Simple Helix's attempt to impose upon Relus the loss of

28

Shickles's continuing ability "to deceive and steal from Simple Helix."[11]  (Doc. 28-1 ¶ 20); *see Eppes v. Thompson*, 79 So. 611, 615 (Ala. 1918) ("Wherever one of two innocent persons must suffer by the act of a third, he who enabled such third person to occasion the loss must sustain it.")  (quoting *H.C. & W.B. Reynolds Co. v. Reynolds*, 67 So. 293, 296 (Ala. 1914)).

In summary, Simple Helix does not plausibly allege Relus failed to discharge its contractual duty to refund the $501,207 overpayment.  To the contrary, the proposed Amended Complaint establishes that Simple Helix – acting through Shickles – instructed Relus to furnish the $501,207 refund via a wire transfer to the Wells Fargo account, and that Relus performed its promise to refund the overpayment precisely as instructed.  Simple Helix thus remains estopped from denying the binding effect of

---

[11] The court heeds Simple Helix's caution that if it remains estopped from denying Shickles's agency authority in the circumstances at bar, "then Relus could have acted with complete irresponsibility in disposing of Simple Helix's money upon any request from an apparent agent of Simple Helix, regardless of the nature of the request."  (Doc. 31 at 6).  "For example," Simple Helix posits, "upon such a request from a known agent, . . . Relus would be justified in taking the $501,207.00 of Simple Helix's money, converting it [to] cash, placing the cash in a suitcase, and leaving the suitcase at a quiet corner of a parking lot deck in Atlanta."  (*Id.*)  Simple Helix overstates the import of the court's assessment.

As elaborated in the foregoing discussion, Shickles possessed the authority to bind Simple Helix to his refund instructions and Relus's confirming wire transfer not because he enjoyed abstract, limitless agency authority, but rather based upon Simple Helix's own allegations and the specific facts of the May 31, 2017, email exchange with Relus.  To be sure, any number of circumstances could dictate a contrary finding (including the circumstances of Simple Helix's hypothetical case, which illustrates a scenario overtly fraudulent).  However, based upon Simple Helix tacitly averring Shickles possessed authority vis-à-vis the transactions encompassing the tender and refund of the overpayment, and Relus receiving *Shickles's* confirmation to refund the overpayment to the Wells Fargo account, the instant ruling does not grant "Relus *carte blanche* to always follow every instruction of an agent."  (*Id.* at 8).

Shickles's misrepresentations and Relus's $501,207 wire transfer.  Accordingly, Simple Helix's proposed Amended Complaint fails to state a claim upon which relief can be granted for an account stated or breach of contract, and, therewith, remains subject to dismissal pursuant to Rule 12(b)(6).  Concomitantly, Simple Helix's proposed amendments to its account stated and breach-of-contract claims would be futile.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing discussion, the court **DENIES** Simple Helix's Motion for Leave to File an Amended Complaint Under Federal Rule of Civil Procedure 15.

**DONE** this 17th day of December, 2020.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE